UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ALEXANDER E. MOORE                                                    PLAINTIFF

V.                                            CIVIL ACTION NO. 3:10-cv-569-DPJ-FKB

NISSAN NORTH AMERICA, INC.                                           DEFENDANT

ORDER

This employment-discrimination case is before the Court on the motion of Defendant

Nissan North America, Inc. ("Nissan") for Summary Judgment [49] pursuant to Federal Rule of

Civil Procedure 56 and its Motion to Strike the EEOC Determination from the Summary

Judgment Record [57].  Plaintiff Alexander E. Moore opposes both motions [53, 59].  Although

the Court is sympathetic to Mr. Moore's plight and finds Nissan's behavior less than exemplary,

Nissan is entitled to summary judgment because Mr. Moore has failed to create a question of fact

regarding his ability to perform the essential functions of his employment even with reasonable

accommodations.

I.        Facts and Procedural History

The following facts are undisputed.  Moore began working at Nissan's Canton,

Mississippi, facility in January 2003, in the Paint Department in Paint System 1.  Moore worked

as a Production Technician in both the "Repaint/Prep Booth" and the "Double-Clear Booth"

inspecting vehicle exteriors for defects in the paint or the "double-clear" finishing coat and

repairing the same.  Moore worked without incident until 2007 when he showed the first signs of

multiple sclerosis ("MS").   After that, he suffered weakness in his legs and incidents of

buckling.  Nissan placed Moore on leave in May 2008 and then terminated his employment when the leave expired in June 2009.

Moore received a Notice of Right to Sue from the EEOC and filed the instant action on October 14, 2010, alleging Nissan discriminated against him in violation of the Americans with Disabilities Act ("ADA") when it terminated his employment without providing a reasonable accommodation or engaging in an interactive process to determine whether Moore could be accommodated, and by retaliating against Moore for enforcing his right to reasonable accommodation under the ADA.  *See* Compl. [1] ¶¶ 20-26.  Moore brings a second cause of action for intentional infliction of emotional distress and seeks punitive damages.  *Id.* ¶¶ 27-31. Nissan filed a Motion for Summary Judgment on Moore's claims [49], which Moore opposed [53].  The Court has personal and subject matter jurisdiction and is prepared to rule.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when ... both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

    A.    Nissan's Motion to Strike EEOC Determination

The Court addresses as a preliminary issue Nissan's Motion to Strike the EEOC Determination from the summary-judgment record.  Moore submitted a letter from the EEOC dated September 17, 2009, summarizing its "determination" that "evidence obtained in the [EEOC's] investigation established reasonable cause to believe that [Moore] was discriminated against in violation of the Americans with Disabilities Act of 1990."  Pl.'s Resp. [53] Ex. 7. Consideration of the admissibility of an EEOC determination letter in the context of a summary judgment motion is rare.  *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 598 n.9 (S.D. Tex. 2005); *Bynum v. Ft. Worth Indep. Sch. Dist.*, 41 F. Supp. 2d 641, 657 (N.D. Tex. 1999).  Nevertheless, when evaluating a motion for summary judgment, the Court may consider only evidence which would be admissible at trial.  *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.

1995).  Therefore the Court undertakes to determine whether the EEOC letter constitutes

admissible evidence proper for inclusion in the summary judgment record.

   1. Rule 803(8)©[1]

 Nissan first seeks to exclude the letter for failure to satisfy the trustworthiness

requirement of Federal Rule of Evidence 803(8)©.  Though hearsay is generally inadmissible,

Rule 803(8)© creates a rebuttable presumption that reports of public offices or agencies setting

forth "factual findings resulting from an investigation made pursuant to authority granted by

law," are admissible "unless the sources of information or other circumstances indicate lack of

trustworthiness."  Fed. R. Evid. 803(8)©; *Eason v. Fleming Cos.*, No. 92-1390, 1993 WL

13015208, at *3 (5th Cir. Aug. 24, 1993).  Thus, the party opposing admissibility must

demonstrate its lack of trustworthiness.  *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 202

(5th Cir. 1992); *Eason*, 1993 WL 13015208, at *3.  The trustworthiness inquiry focuses on

whether reliable methods were used in creating the report rather than on its findings and

conclusions.  *Eason*, 1993 WL 13015208, at *3.  "[G]eneral complaints that the report is

incomplete or inaccurate go to the weight afforded the report rather than to its admissibility."  *Id.*

 Nissan argues the EEOC letter is not reliable or trustworthy because it contains

"conclusory findings" without providing record cites or explaining the investigator's findings.

Def.'s Mot. [58] at 4; Rebuttal [61] at 1.  Nissan complains that the investigator reviewed only

---

 [1]Federal Rule of Evidence 803(8)(C) was amended effective December 1, 2011, after briefing in this matter concluded.  The amended rule 803(A)(iii) & (B) permits admission of "[a] record or statement of a public office if:  (A) it sets out: (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness."  Because the changes to the rule were "intended to be stylistic only," and because the parties' briefs and cases cited refer to the rule as 803(8)(C), the Court's Order will likewise refer to the rule as 803(8)(C).  *See* Fed. R. Evid. 803, Advisory Comm. Notes, 2011 Amendments.

Nissan's written response, failed to interview any Nissan witness, and made no effort to evaluate the impact of Moore's physical limitations on his ability to perform the job.  Rebuttal [61] at 1–2. The Court finds Nissan's complaints go to the letter's findings and completeness.  *Eason*, 1993 WL 13015208, at *3 (finding arguments concerning evidence not submitted to EEOC and interviews not conducted bear on the determination's completeness rather than its trustworthiness) (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991)).  Nissan fails to rebut the presumption that the EEOC letter is admissible under Rule 803(8)(C).

　　　　　　2.　　　Rule 403

　　　　Nissan also argues that the EEOC letter is inadmissible pursuant to Rule 403.  Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of. . . unfair prejudice, confusion of the issues, or misleading the jury. . . ."  Fed. R. Evid. 403.  The Fifth Circuit has held that investigative reports and files of the EEOC can be "highly probative" and "the balancing test of Rule 403 should not be misused in such a way that 'would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C).'"  *Cortes*, 977 F.2d at 201 (citations omitted); *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir. 1985) ("EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination. . . .").  Even so, the Court retains discretion to exclude these reports when it finds the Rule 403 balance tips in favor of exclusion.  *Cortes*, 977 F.2d at 201–02.  While a determination that summarizes evidence in the record may be admissible where it is fully supported by the record, *Eason*, 1993 WL 13015208, at *4, conclusory determinations,

unlike detailed evidentiary statements and findings of fact, can be unfairly prejudicial.  *Cortes*, 977 F.2d at 202 (excluding determination).

Here, many factual assertions included in the letter are supported by the record; however, most of these findings are superficial and generally undisputed.  For example, the parties do not dispute the investigator's findings that Moore has MS, that he suffers from leg weakness, that he requested an accommodation, or that he was put on short-term disability and his employment eventually terminated.  But the letter fails to make detailed factual findings concerning Moore's limitations or the requirements of his position at Nissan.  As a result, the investigator makes key legal determinations without explaining the basis for them—specifically, that Moore could "perform the essential functions of his job (paint technician) with a reasonable accommodation" and that Nissan terminated Moore's employment "because of his disability and failed to provide a reasonable accommodation to [Moore]."  *See* Pl.'s Resp. [53] Ex. 7.  These are the central issues of the case.  Omitting the particular evidence on which these findings are based diminishes the letter's probative value.

Another issue affecting the letter's probative value concerns the timing of the investigation.  Moore filed the EEOC charge in May 2008, and though it appears the investigator knew Moore's employment was terminated in June of 2009, it is unclear to what extent the investigation included events occurring after May 2008.  The time period between May 2008 and June 2009 is highly relevant to Moore's claims and, based on the evidence submitted in summary judgment, evidence would be submitted at trial detailing events during that time period that may or may not have been available to the investigator.  *See Lucas v. City of Shelby*, 246 F. Supp. 2d 516, 521 (N.D. Miss. 2002) (excluding determination where it would "invade the province of the

jury"; EEOC investigator did not hear certain evidence that the jury did hear, and unfair prejudice outweighed probative value).

Considering potential unfair prejudice, a jury may not be able to disregard the letter's conclusory findings concerning the ultimate determination in this case, *i.e.* whether Moore could perform the essential functions of his job if Nissan provided him with a reasonable accommodation.  Though the letter states "the investigation established reasonable cause" to believe Nissan discriminated against Moore, other language in the letter is less tentative regarding whether an ADA violation occurred.  The letter is titled "Determination," and states "this determination is final," and "[w]hen the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation."  Pl.'s Resp. [53] Ex. 8.  This likens the letter to an EEOC violation letter, rather than one which limits its finding to reasonable cause, and creates the potential for unfairly prejudicing or confusing a jury.  *See E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir. 1994); *Harris v. Miss. Transp. Comm'n*, No. 3:07-cv-366, 2008 WL 5427795, at *2–3 (S.D. Miss. Dec. 30, 2008) (Anderson, M.J.).  *Compare Smith v. Universal Servs., Inc.*, 454 F.2d 154, 156–58 (5th Cir. 1972) (reversing exclusion of EEOC report ("Decision") summarizing charges and finding reasonable cause to believe a violation occurred without language indicating a final determination).[2]

―――――――――――――――――

[2]Even if the EEOC determination were included in the record, the letter is insufficient in itself to create a genuine issue of material fact.  *Chavarria v. Despachos Del Notre, Inc.*, 390 F. Supp. 2d 591, 598 n.9 (S.D. Tex. 2005) (citing *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321 (10th Cir. 1999)); *Bynam v. Ft. Worth Indep. Sch. Dist.*, 41 F. Supp. 2d 641, 657 (N.D. Tex. 1999) (same).  Inclusion of this document in the record would not alter the Court's ruling on Nissan's dispositive motion.

The Court finds the EEOC letter is inadmissible under Rule 403 and strikes it from the summary-judgment record.

B.     ADA Claim

Turning to the substance of the summary-judgment motion, Nissan argues that Moore's claim for discrimination under the ADA fails because Moore cannot establish a *prima facie* case of discrimination.  The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006).  Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual who is an applicant or employee." *Id.* § 12112(b)(5)(A).  A plaintiff makes a *prima facie* showing of discrimination under the ADA where he shows "that (1) he has a 'disability;' (2) he is a 'qualified individual' for the job in question;  and (3) an adverse employment decision was made because of his disability." *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999).[3]  The parties agree that Moore is disabled for purposes of the ADA, and that an adverse employment decision was made because of his disability, *i.e.* Nissan placed Moore on leave and eventually terminated his employment.  Thus, the only prong of the

_____

[3]Nissan terminated Moore's employment because of his disability.  The Court therefore applies the test used in cases involving direct evidence of discrimination. *Rizzo v. Children's World Learning Ctrs.*, Inc., 84 F.3d 758, 762 (5th Cir. 1996) (*Rizzo I*) (noting district court incorrectly applied *McDonnell Douglas* where employer admitted employment decision related to disability but contended it had a reason to discriminate because plaintiff's disability posed a threat to the safety of the children she would be driving).

8

*prima facie* case which is disputed is whether Moore is a "'qualified individual' for the job in question." *Burch*, 174 F.3d at 619.

       1.    *Prima Facie* Case/Qualified Individual

A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff must show either that "(1) he could perform the essential functions of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Burch*, 174 F.3d at 619; *see Appel v. Inspire Pharm., Inc.*, 428 F. App'x 279, 284 (5th Cir. 2011) ("An employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability.").

       a.    Essential Functions

The Court first assesses whether Moore can perform the essential functions of his position *without* a reasonable accommodation. "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires" but "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

> Evidence of whether a particular function is essential includes, but is not limited to:
>     (I) The employer's judgment as to which functions are essential;
>     (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>     (iii) The amount of time spent on the job performing the function;
>     (iv) The consequences of not requiring the incumbent to perform the function;
>     (v) The terms of a collective bargaining agreement;
>     (vi) The work experience of past incumbents in the job; and/or
>     (vii) The current work experience of incumbents in similar jobs.

*Id.* § 1630.2(n)(3).  "Whether a particular function is essential is a factual determination that must be made on a case by case basis."  29 C.F.R. Pt. 1630, App. § 1630.2(n) at 394.

Here, the parties generally agree as to the functions of a Production Technician, and the Court bases its analysis on Moore's descriptions of his various duties.  First, in the Repaint/Prep Booth, Moore's duties included "mostly sanding out defects [in the vehicle's paint], wiping down, prepping, cleaning them up for the unit, wipe them from the inside."  Moore Dep. at 23.  Moore would examine the vehicle from front to back, kneeling, if necessary, to see defects:

> We go from head to—from the front of the truck all the way from the side, you know, the hood. My side would be the left or the right, whichever, and work this side all the way down, go down to the lower end, kind of get down on your, you know, get down on the floor on your knees and see if there were any defects down there; and if it is, you, you know, get down on the floor and work it out. Or if it's low enough, if it's something inside the door walls, you sit inside the truck and kind of work your defects out. And then you complete that task, and you go on to the rest of the truck doing the same process, you know, looking down on the lower part of the truck.

*Id.* at 24.  Moore would then get on a lift that raised him up to examine the vehicle's roof, leaning over to work on any defects there:

> Then you get on this lift, you press the button, and it raises you up to do the roof. You check your side of the roof, and, you know, if any—you lean over and work it, if there's anything to work; but you also have to always to clean it, clean the—prep for any. . . foreign contamination. . . . And if there is something there, we lean over on it and work it out and prep it and lower it down and go around to the rest of the body of the truck, and get around to the truck bed.

*Id.*  If working on a truck, Moore would have to get "inside the truck bed, get inside and, you know, kind of—you'd have to lay down and try to clean it out. . . ."  *Id.* at 23, 24–25.

Moore held similar duties when working in the Double-Clear Booth.  Moore would examine the unit from front to back, looking for defects, squatting, kneeling, and bending where necessary to get a good look at the defects:

I would start from the front of the unit and work my way around the side, looking
for defects, you know, . . . You just squat down on your knees. . . you could see
more defects by kneeling down and looking down the side, you could see waves
and stuff. . . . We get down on the floor, kind of look at it, you know, make sure
ain't no—you know, you don't miss no defects or waves or something like that. . .
. Your knees had to be on the floor, and you look down the side of it, you know,
just looking for, you know, defects and stuff. . . . Q: So you'd have to do a lot of
kneeling and kind of bending down on your knees to look for defects?  A: Yes,
uh-huh.

*Id.* at 29–30.

Though primarily assigned to the Repaint/Prep and Double-Clear Booths, Moore

occasionally worked in the "Underbody" Department, mopping part of the area or placing

stickers over holes in the vehicle's body for protection from the underbody anti-rust coating. *Id.*

at 31.  Additionally, Moore worked from time to time in the "Wax Booth" on the first floor,

either opening the vehicle's doors and spraying them with a wax gun, or working "up front"

walking around the vehicle and checking for defects. *Id.* at 32–33.

Comparing these functions to Moore's documented physical limitations reveals that he

was not capable of performing the essential functions without accommodation.  Moore's MS

caused his legs to feel numb and weak and sometimes they would buckle.  Moore Dep. at 83–87;

Def.'s Mot. [49] Ex. C, Moore Medical Records at 35–37.  This occurred six or seven times in

2007.  Moore Dep. at 88–89.  After seeing other physicians, Moore sought out his own

independent neurologist Dr. Larry Parker in March or April 2008.  Moore Dep. at 81–83.  Shortly

thereafter, Moore presented a letter to Nissan from Dr. Parker that described his condition as

"relapsing/remitting multiple sclerosis," past attacks of which have left Moore with "mild leg

weakness, mild leg spasticity, increased reflexes in his legs, mild leg incoordination, and he

apparently has spells after he stands for a time, where his legs might buckle, and he apparently

has difficulty getting up."  Def.'s Mot. [49] Ex. E, May 7, 2008 Parker Letter.  Parker noted that

11

Moore was receiving physical therapy, though it was "too early to know if this will work."  *Id.*
Parker stated Moore "does have a disability which may keep him from standing, climbing, or
operating heavy machinery for many hours at a time."  *Id.*  "If his job description could be
changed to a desk job, or job which would not require standing for many hours at a time, he is
quite likely to be able to do his job well."  *Id.*  Parker provided another assessment Spring 2009,
noting that Moore could stand for 2 hours intermittently; walk for 3 hours intermittently; could
not climb but could twist/bend/stoop; could lift 10 pounds "frequently" and up to 50 pounds
"occasionally"; and could work a "sedentary job" 6–8 hours/day.  Def.'s Mot. [49] Ex. I;
Barringer Dep. at 39 & Ex. 9.  By June 2009, Parker noted that Moore's condition had not
changed and therefore his "deficits . . . are permanent."  Def.'s Mot. [49] Ex. H.  Indeed, Moore
concedes that his physical therapy "didn't do any good" and he thinks he is "going to have this
weakness from now on."  Moore Dep. at 96.

These restrictions prevented Moore from performing the essential functions of his former
positions.  First, Moore's undisputed standing limitations impair his ability to perform at least
one function both sides agree is essential—significant, even if not continuous, standing—without
a reasonable accommodation.  *See* Pl.'s Br. [54] at 7, 13; Def.'s Br. [50] at 16.  Second, forms
submitted by Parker in 2008 indicate Moore could not squat or kneel at all.  Kerr Aff. Ex. 5 at 8.
Later forms omit these categories, but in June 2009 Parker later noted that Moore's "current
deficits, as described on the many forms I have filled out—have not changed over time, and will
be permanent."  Def.'s Mot. [49] Ex. H.  Moore fails to dispute these limitations or that kneeling
and squatting are essential functions of his position.

Finally, it is undisputed that Moore is restricted from climbing.  *See* Pl.'s Resp. [53] Ex.
5, May 7, 2008 Parker Letter; Def.'s Mot. [49] Ex. I.  Though Moore argues conclusorily that this

is a "marginal function" of his position, he fails to create a triable issue on this point.  Moore

concedes that his primary assignment to the Repaint or Double-Clear Booths on the second floor

required ascending a long steel staircase to reach that floor, and then a separate 3-stair flight in

order to access each booth.  Moore Dep. 35–37, 72–74.  Additionally, Nissan presented

photographic evidence showing the story-tall staircase leading to the second level and the steps

into the Repaint, Double-Clear and Wax Booths.  Kerr Aff. Exs. 1–4.  Though Moore may not

spend significant time in the Production Technician position climbing stairs, he is restricted from

doing *any* climbing at all, and Nissan presents unrebutted evidence that climbing stairs is a

necessary predicate to performing a job in either the Repaint/Prep or Double-Clear Booth.  The

amount of time spent performing a function is just one factor to consider; others, including the

employer's judgment, the consequences of not requiring the incumbent to perform the function,

and Moore's own experience weigh in favor of considering the ability to climb stairs necessary to

perform the "essential functions" of the Production Technician position.  *See* 29 C.F.R. §

1630.2(n)(3); *Alford v. Telepax, Inc.*, No. 1:94-cv-53-S-O, 1995 WL 1945456, *7–10 (N.D.

Miss. Mar. 7, 1995) (granting summary judgment where it was undisputed that some pole-

climbing was required to perform telephone repairman position, making it "not marginal," and

that plaintiff's injury prevented climbing, even though the parties disputed the amount of pole-

climbing required).[4]

---

[4]*See also Ray v. Vill. of Endicott, N.Y.*, No. 99-7879, 2002 WL 34244995, at *2 (2d Cir.
May 8, 2002) (finding no genuine issue of material fact regarding plaintiff's ability to perform
essential functions where water tank inspection was indisputably an "essential function" of
operator position, at least five water tanks required the operator to climb a ladder for inspection,
and plaintiff "offer[ed] no explanation for how he would be able to inspect the water tanks given
the significant limitations on his ability to climb stairs and ladders").  *Cf. Skerksi v. Time Warner
Cable Co.*, 257 F.3d 273, 282–83 (3d Cir. 2001) (genuine issue of material fact whether climbing
was an essential function of cable television installer technician position where plaintiff
presented evidence that he did not climb for three years while in the position and deposition

Moore counters all of this by observing his five-year work history without incident.  Pl.'s Br. [54] at 16.  But the period prior to August 2007, when his MS manifested itself, is unhelpful in determining whether Moore is now qualified for the position.  And his tenure after that date was not incident free.  Though Moore did return to work for four months in which he undisputedly had MS, he suffered at least one episode of leg weakness at work in that period, and other record evidence suggests he had trouble performing during this time.  *See* Def.'s Mot. [49] Ex. D, April 2008 Parker Letter.

Thus, given Moore's undisputed standing, kneeling/squatting, and climbing restrictions, Moore fails to raise a triable issue concerning his ability to perform the essential functions of his job without a reasonable accommodation.  *See Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093–94 (5th Cir. 1997) (finding plaintiff's own evidence conceded he was not qualified to perform the essential functions of the job; "On the one hand he sets out the essential job requirements of a chemical process operator and on the other he basically admits that he cannot fulfill those basic requirements.").

b.       Reasonable Accommodation

The question becomes whether Moore meets his burden to show he can perform the essential functions of the Production Technician position *with* a facially reasonable accommodation.  Under the ADA, a  "reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

---

testimony on the issue was conflicting).

14

42 U.S.C. § 12111(9); *see also* 29 C.F.R. § 1630.2(o)(1)–(2).  A reasonable accommodation is a method of accommodation that is reasonable on its face or "in the run of cases."  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–402 (2002); *Hernandez v. Aldine Indep. Sch. Dist.*, 192 F.3d 125, at *3 (5th Cir. 1999) (table decision); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1058 (5th Cir. 1997); *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). "While [a reasonable accommodation] may include job restructuring, the ADA does not require an employer to eliminate or transfer any of the essential functions of a position, [or] to create a new job as an accommodation."  *Hernandez*, 192 F.3d 125, at *3 (citations omitted).

The employee bears the burden of production and persuasion to show the existence of some accommodation that would allow him to perform the essential functions of his position, though he bears only a "light" burden of production in showing the reasonableness of such function "that is satisfied if the costs of the accommodation do not on their face obviously exceed the benefits."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 & n.3 (2d Cir. 2009); *see Barnett*, 535 U.S. at 401–402; *Riel*, 99 F.3d at 683.  Once a plaintiff makes a *prima facie* showing of discrimination, including the existence of a facially reasonable accommodation, the burden shifts to the employer to "demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A); *see Barnett*, 535 U.S. at 401–402; *Burch*, 174 F.3d at 619; *Riel*, 99 F.3d at 683.

Here, Moore requested a stool and the ability to take "frequent" two to three minute breaks while working as a proposed accommodation.  Pl.'s Resp. [53] Exs. 1–2, 11.  But this request fails to create a triable issue.  First, the stool would not assist in climbing the steel staircase to the work stations.  Second, once Moore arrived, he could not perform the tasks he described while sitting.  *See generally* Moore Dep. at 23–24.  Finally, the frequent breaks he

requested would not resolve the limitations his own doctor recommended.  As noted, Dr. Parker

recommended sedentary work—which this was not—and noted early in his treatment that Moore

"does have a disability which may keep him from standing, climbing, or operating heavy

machinery for many hours at a time."  *See* Def.'s Mot. [49] Ex. E, May 7, 2008 Parker Letter.

Parker also submitted a form to Nissan noting Moore could return to work with restrictions,

including no squatting, climbing, kneeling or crawling, and no "standing/lifting/climbing for

many hours in a day."  Def.'s Mot. [49] Ex. F; Kerr Aff. ¶ 23 & Ex. 5 at 8.  An assessment by

Parker in March or April 2009 notes Moore could stand for 2 hours intermittently; walk for 3

hours intermittently; could not climb but could twist/bend/stoop; could lift 10 pounds

"frequently" and up to 50 pounds "occasionally"; and could work a "sedentary job" 6–8

hours/day.  Def.'s Mot. [49] Ex. I; Barringer Dep. at 39 & Ex. 9.  Thus, even with the

intermittent sitting Moore requested as an accommodation, his doctor would limit him to

standing for two hours a day.

Nissan evaluated Moore's requested accommodation and concluded that the stool would

not address these restrictions.  In June 2009, when Moore exhausted his medical leave, Nissan

asked Dr. John Barringer of the Nissan medical clinic to evaluate Moore's ability to return to

work.  *Id.* ¶¶ 26–28.  Barringer spoke with Moore once, but did not examine or meet with Moore

as part of this process.  Barringer Dep. at 24–25.  After speaking with managers of the Paint

Department and evaluating whether Moore could perform any jobs within the department with

the aid of a stool, Barringer concluded there were no jobs within the Paint Department, sedentary

or otherwise, which Moore could perform given his restrictions of:  "No climbing; Limit

standing/walking to 2 hours (intermittent); Frequent lifting up to 10 lbs.; Occasional lifting 11-50

lbs; No lifting [greater than] 50 lbs."  Kerr Aff. Ex. 7; Barringer Dep. 31–32, 34–36.  When

Barringer informed Moore of this, Moore suggested he could sit on a stool while working the Wax Booth.  Kerr Aff. Ex. 7; Barringer Dep. 35–36.  According to Barringer, he explored this option, but determined that it was not feasible because the time spent sitting in the Wax Booth was unpredictable.  Kerr Aff. Ex. 7; Barringer Dep. at 35.  Moore spends little time addressing this particular assignment in his response and has not offered competent record evidence that the Wax Booth job was available full time or that he could perform it.

Apart from whether Moore could perform his Production Technician position with a reasonable accommodation, Moore argues he "was qualified for multiple positions with Nissan" and "could have performed the functions of any job he desired at Nissan, if he was ever afforded the opportunity."  Pl.'s Br. [54] at 8–9.  A "reasonable accommodation" can include a "reassignment to a vacant position."  42 U.S.C. § 12111(9)(B).  "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant."  *Burch*, 174 F.3d at 620 (citation omitted).  Moreover, for an employer to fail to accommodate through reassignment, the employee must request reassignment or at least make his interest known.  *Id.* at 621–22.  Moore fails to present any evidence that he requested reassignment to another position outside the Paint Department, and he has not identified any specific positions that he could perform with accommodations.  Nissan, on the other hand, presents unrebutted evidence that there were no vacancies in the Paint Department, Production Department, "or elsewhere in the plant that Moore could have safely performed with his restrictions."  *See* Kerr Aff. ¶ 29.[5]

---

[5]Though Barringer was unaware of it, at some point Nissan considered Moore for a janitor position, but rejected the possibility because it required constant walking through the plant.  *Compare* Barringer Dep. at 33, 36–37, *with* Kerr Aff. ¶ 27 & Ex. 7, Sept. 29, 2009 Email.

Thus, Moore fails to meet his burden to show that a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job, such that he is a "qualified person" for purposes of his *prima facie* ADA discrimination case.

c.      Interactive Process

Moore contends that Nissan's failure to accommodate his requests or engage in an "interactive process" to determine possible accommodation of Moore's limitations precludes summary judgment for Nissan. Pl.'s Br. [54] at 8–16. ADA regulations require an employer to engage in an interactive process with the disabled employee to determine whether a reasonable accommodation exists. *See* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). The EEOC's interpretive guidance provides: "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. Pt. 1630, App. § 1630.9. The employer should engage in "a meaningful dialogue with the employee to find the best means of accommodating that disability. The process thus requires 'communication and good-faith exploration.'" *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (citations omitted). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736

18

(5th Cir. 1999) (citations omitted); *see Cutrera v. Bd. Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005).

The record in this case raises a question of fact whether Nissan engaged in a good faith interactive process.  Even so, the issue is whether that question of fact is sufficient to defeat summary judgment absent a showing by Moore that the lack of good faith led to a failure to reasonably accommodate.  A review of Fifth Circuit precedent leaves some doubt on this point, but the Circuit Courts of Appeal are in near unanimity that the plaintiff retains the burden of showing that a reasonable accommodation was available.

Looking first within this circuit, it has been repeatedly noted that a failure to engage violates the ADA when it "leads to a failure to reasonably accommodate."  *See Cutrera*, 429 F.3d at 112; *Loulseged*, 178 F.3d at 736.  This suggests a need for the plaintiff to show causation—*i.e.*, that a reasonable accommodation was available and the failure to engage caused the failure to accommodate—before the employer's failure to engage in an interactive process will result in liability.

*Chevron* raises some doubt about this conclusion.  In that panel decision, the Court stated a disabled person seeking an accommodation is "not required to come up with the solution . . . on [his] own" because "[u]nder the ADA, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available."  *Chevron Phillips Chem. Co.*, 570 F.3d at 621–22 (citing *Cutrera*, 429 F.3d at 113).  The Court then held that "a jury reasonably could find that CPChem, instead of engaging in the interactive process that the ADA requires, simply refused to consider Netterville's request for accommodation."  *Id.* at 622 (reversing summary judgment).  It is not completely clear whether the Fifth Circuit meant that

19

plaintiffs are "not required to come up with the solution" during the interactive process, or in response to a summary-judgment motion.  Moreover, *Chevron* does not address the present context where the employer has come forward with record evidence that no accommodation was in fact available.

The Court concludes that *Chevron* was not intended to supplant Rule 56 or a plaintiff's burden of establishing the essential elements of an ADA claim.  Rule 56(a) of the Federal Rules of Civil Procedure entitles a party to judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In the ADA context, Moore must first prove that he is a qualified individual—that he could perform the essential functions with or without reasonable accommodation.  *See Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 218 (5th Cir. 2000) (*Rizzo III*) ("[Under the ADA,] it is the employee's burden to prove that he is a qualified individual with a disability. . . .");  *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) (affirming judgment as a matter of law where employee failed to prove the availability of a reasonable accommodation or vacant position to which he could be transferred); *see also Toronka v. Continental Airlines, Inc.*, 411 F. App'x 719, 726 (5th Cir. 2011) (affirming summary judgment where plaintiff failed to prove an available vacant position for which he was qualified).

There is no statutory basis suggested for concluding that failure to engage in the interactive process removes these burdens or creates a stand-alone cause of action.  It follows that the failure to engage is not a *per se* violation of the ADA, *Picard v. St. Tammany Parish Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011), because the "interactive process is not an end i[n] itself—it is a means to the end of forging reasonable accommodations."  *Id*. (citation omitted).  Instead, the failure to engage is actionable when it "leads to a failure to reasonably accommodate

20

an employee." *Cutrera*, 429 F.3d at 112; *Loulseged*, 178 F.3d at 736.  Plaintiff maintains the burden of proving the failure to reasonably accommodate.  When, as in this case, the employer has come forward with Rule 56 evidence that no reasonable accommodation existed, the plaintiff—after discovery—must meet the evidence and create a jury question on his ultimate burden.  Had *Chevron* intended to disrupt these principles, it would have clearly said so.

This holding comports with the rulings of nearly every circuit to have examined this more precise issue.  *McBride v. BIC Consumer Prods. Mfg. Co., Inc.,* 583 F.3d 92, 100 (2d Cir.  2009) (collecting cases) (affirming summary judgment and observing that "each of our sister Circuits to have considered the issue has concluded that failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible"); *Willard v. Potter*, 264 F. App'x 485, 488 (6th Cir. 2008) (affirming summary judgment and holding that even if employer did not engage, "summary judgment is warranted by the failure of the plaintiff after discovery to identify a vacant, funded position that the interactive process would have led to"); *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006) (affirming summary judgment and holding that "[u]nder the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process"); *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (affirming judgment and noting that "[f]ailure to engage in this 'interactive process' cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible"); *Donahue v. Consolidated Rail Corp.*  224 F.3d 226, 234 (3d Cir. 2000) (Alito, J.) (affirming summary judgment and holding that absent proof of an available position, "summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process"); *Jackan v. N.Y. State Dep't of Labor*,

21

205 F.3d 562, 567 (2d Cir. 2000) (affirming judgment and holding that plaintiff maintains the burden of showing that a reasonable accommodation exists); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (reversing summary judgment but observing, "Even if Midland Brake failed to fulfill its interactive obligations to help secure a reassignment position, Smith will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position"); *Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 19 (1st Cir. 1998) (affirming summary judgment and holding that "plaintiff's assertion that [defendant employer] failed to engage in 'meaningful' interaction with plaintiff regarding reasonable accommodation is of no moment—or, more precisely, it puts the cart well before the horse—because no reasonable trier of fact could have found, on this record, that [a reasonable accommodation was possible.]"); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (affirming summary judgment and rejecting argument that the "interactive process" envisioned in the regulations carry over to a plaintiff's burden of production in court (thus, relieving the plaintiff-employee of her "burden of producing evidence that reasonable accommodations were available")).

Once Nissan offered its proof that no reasonable accommodation existed, Rule 56(c)(1) required Moore to either offer record evidence creating a genuine dispute of material fact or otherwise show that Nissan's materials fail to establish the absence a genuine dispute.  Fed. R. Civ. P. 56(c)(1)(A), (B).  As discussed above, Moore has not demonstrated that a reasonable accommodation was available.  The alleged lack of interactive process does not remedy Moore's

lack of proof.[6]   Therefore, Nissan's summary judgment motion is granted as to Moore's ADA discrimination claim and it is dismissed with prejudice.

      C.     Abandoned Claims

Nissan moves for summary judgment on Moore's additional claims for retaliation against him in violation of the ADA, intentional infliction of emotional distress ("IIED"), and punitive damages.  *See* Compl. [1] ¶¶ 25, 27–31.  Moore seemingly abandons these claims, and Nissan's motion otherwise appears meritorious.

Concerning retaliation, Moore alleges that, "[b]y threatening retaliation, and in fact retaliating, against the Plaintiff for enforcing his right to reasonable accommodations under the ADA, Nissan violated 42 U.S.C.A. § 12203."  Compl. [1] ¶ 25.  That statute provides:  "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C.A. § 12203(a).  To establish a claim of retaliation, "a plaintiff must show that (1) []he engaged in an activity protected under the ADA;  (2) an adverse employment action occurred;  and (3) a causal link exists between the protected activity and the adverse employment action."  *McDowell v. Home Depot USA, Inc.*, 126 F. App'x 168, 170 (5th Cir. 2005).  Moore's only response to Nissan's motion is to reiterate summarily that his forced leave of absence in May 2008 was a "direct result" of his request for accommodation, and to cite his own hearsay testimony that in 2007 (prior to requesting accommodation) Moore heard Nissan planned to fire

_____

      [6]Nissan alternatively argued that accommodating Moore would cause undue hardship and create a direct threat to Moore and others.  These arguments have some appeal, but because Moore fails to state a *prima facie* case, the Court does not address them.

him.  Pl.'s Br. [54] at 11.  Moore provides insufficient evidence of a causal connection between his request for accommodation and an adverse employment action to survive summary judgment on his separate retaliation claim.

Moore fails to respond at all to Nissan's motion for summary judgment on his IIED claim.  Nissan correctly argues that a claim for IIED will not lie in a "mere employment dispute" unless the employer's conduct is "extreme or outrageous."  *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003).  Moore fails to raise a triable issue that Nissan's conduct rose to the level required to sustain an IIED claim here, or provide any evidence that his claim is timely under the one-year statute of limitations governing such claims.  *See Citifinancial Mortg. Co., Inc. v. Washington,* 967 So. 2d 16, 19 (Miss. 2007) (citing Miss. Code Ann. § 15-1-35).

Moore likewise fails to respond concerning his claim for punitive damages or to present any evidence that would show Nissan acted "with malice or with reckless indifference to [his] federally protected rights."  *See* 42 U.S.C. § 1981a(b)(1); *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 732 (5th Cir. 2007).

Therefore Nissan's summary judgment motion is granted as to Moore's claims for retaliation, IIED and punitive damages and these claims are dismissed with prejudice.

V.    Conclusion

This is a sad case, but the reality is that Moore's condition—which according to the records will worsen—prevents him from performing the essential functions of his former position, and he has not identified any other available positions he could perform.  Arguments

24

not specifically addressed herein would not alter the finding that Nissan's Motion for Summary

Judgment [49] and its Motion to Strike [57] should be granted.

**SO ORDERED AND ADJUDGED** this the 5th day of July, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE